GEORGE R. TAYLOR AND PEARLIE H. TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 36336-85.
United States Tax Court
T.C. Memo 1987-399; 1987 Tax Ct. Memo LEXIS 396; 54 T.C.M. (CCH) 129; T.C.M. (RIA) 87399; August 11, 1987. George R. Taylor, pro se. Wilton A. Baker, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: *397 Year Ending
Deficiency
December 31, 1982
$ 11,352
December 31, 1983
11,839
Petitioners have conceded all issues raised by the pleadings except the following which remain for decision: (1) Did A & T International, Inc. (A & T) file a valid election to be taxed as a subchapter S corporation for taxable years 1982 and 1983 so as to entitle petitioners to deduct their portion of the A & T losses and investment tax credit (ITC) for these years; and (2) May petitioners include in deductible medical expense certain lawn care expenses incurred in 1982? FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Temple Hills, Maryland, at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1982 and 1983. A & T, a Maryland Corporation, was incorporated January 1, 1982. A & T's original shareholders were George R. Taylor (petitioner) and Mr. Sang Kee Ahn. In 1981, Petitioner was introduced to Mr. Scott White, an attorney with the law firm of Arent, Fox, Kintner, Plotkin & Kahn (Arent, Fox) by Mr. Ahn. Mr. White was engaged *398 by petitioner and Mr. Ahn to prepare the necessary documents for the formation of A & T. The parties had discussed a partnership form of business with Mr. White but he explained the differences between a partnership, a regular corporation and a subchapter S corporation. After the explanation, petitioner and Mr. Ahn decided to follow the recommendations of Mr. White. Mr. White recommended that a subchapter S corporation be the form used for the business of A & T. At a December 1981 meeting petitioner instructed Mr. White to file the corporate papers in Maryland and to file the subchapter S election, Form 2553, for A & T. The A & T shareholders were told verbally that this would be done. Petitioner assumed the "S" election had been filed and thus instructed his return preparer, Cephas Thornton, to file the Federal income tax returns for A & T as an "S" corporation, i.e., on Form 1120S. Petitioner on his 1982 and 1983 individual returns deducted the A & T losses which would have passed through to him in these years had a proper subchapter S election been filed and in 1982 claimed an investment tax credit pass-through from A & T. In May of 1983 petitioner received a letter *399 from the Philadelphia Service Center of the Internal Revenue Service explaining that A & T's Forms 1120S would not be filed since A & T had no Form 2553 for the "S" election on file. Petitioner filed a Form 2553 for 1982 on May 12, 1983. On August 3, 1983, petitioner bought out Mr. Ahn's 10-percent interest in A & T. After receiving the IRS letter petitioner attempted to contact Mr. White at Arent, Fox but was told that Mr. White no longer worked there. The records of Arent, Fox produced pursuant to a subpoena duces tecum showed that the incorporation papers for A & T had been prepared in that office by Mr. White but disclosed no record of a subchapter "S" election having been prepared or filed on behalf of A & T. Due to a severe allergy, petitioner's doctor instructed him not to mow his lawn. Petitioner in 1982 paid a total of $ 178 to have his lawn mowed and claimed a medical expense deduction in that amount for lawn care. Respondent disallowed petitioner's claimed losses in 1982 and 1983 from A & T, his claimed ITC from A & T in 1982, and his claimed medical expense deductions for lawn care in 1982. Resolution of the "S" issue will determine petitioner's adjusted gross *400 income which will resolve the amount of allowable medical expenses for 1983 entirely and for 1982 with the exception of the lawn care medical expense deduction. OPINION Issue 1. Subchapter "S" Election
Petitioner does not argue that A & T made a valid election to be taxed as a subchapter S corporation for 1982 and 1983 but rather contends that the failure of Arent, Fox to make a timely election after having been engaged to do so should entitle him to be treated as if a valid election had been made. Petitioner requests the Court to allow him the deductions for the A & T losses for 1982 and 1983 and the ITC claimed on his 1982 return. Respondent takes the position that the time limits set forth under both former section 1372 [1] and section 1362 should be strictly enforced. Section 1372 [2] governed the elections by small business corporations to be taxed under the subchapter S provisions prior to the Subchapter S Revision Act *401 of 1982 which is applicable to taxable years beginning after December 31, 1982. Consequently petitioner's election for A & T to be taxed as an "S" corporation for 1982 was governed by section 1372 which required that an "S" election for 1982 be made at any time during 1981 or during the first 75 days of 1982. The regulations required shareholder consent to the election. If a proper election was made after the 75-day limit but prior to the end of that taxable year, 1982, it would be effective for the succeeding taxable year, 1983. *402 For taxable year 1983, the "S" election requirements were set forth in section 1362. [3] Under that section a small business corporation was required to elect "S" status at any time during either the preceding taxable year or on or before the 15th day of the third month of that taxable year to be effective for that year. If the election was made after the 15th day of the third month but prior to the end of the year, it would be treated as effective for the following year. *403 In this case, petitioner admits there was no timely election but in effect seeks equitable relief from the statutory requirements. No Form 2553 was filed by petitioner until May 12, 1983. This Form 2553 stated an effective date of January 1, 1982. It had neither signatures under the "Shareholder Consent Statement" portion of the form nor such consents attached to the form. Since this purported election was filed after the 15th day of the third month of 1983 it is unnecessary to decide whether it constitutes a valid election since in no event could it be effective for a year prior to 1984, a year not here in issue. On this record we conclude that A & T had no valid "S" election in effect for the taxable years 1982 or 1983. Other cases have come before this Court and other courts involving untimely purported elections to be taxed as a subchapter S corporation. No case has been called to our attention nor have we found any where this Court or another court has concluded that a taxpayer's election was valid for a year with respect to which the specific time limitations set forth by the pertinent Code sections were not met. As we stated in : *404 It is true that the result may be harsh, but the Court cannot grant an extension in the face of such definite time limits. . Subchapter S was placed in the Code * * * so that businesses could elect their form of organization without having to take into account the tax consequences. The election is optional, but if a taxpayer wishes to take advantage of these provisions he must also comply with their requirements. * * * In any event, whatever the equities or the harsh results, we do not feel that we can grant an extention of time where the Congress has specifically set the time for the making of the election required by the Code if the privilege of special tax treatment is to be enjoyed by certain small business corporations. ; cf. , affirming (C.A. 9, 1940) and a Memorandum Opinion of this Court. [Fn. ref. omitted.] Similarly, in , affd. , the attempted *405 "S" election was held to be invalid because the shareholders had consented and filed their election prior to the actual incorporation of the business; in , "S" treatment was denied because the election was postmarked after the expiration of the allowable time period and thus under the regulations was found to be untimely; and in , the taxpayers' refund claim was denied because their "S" election was held to be invalid. In the Simons case the Form 2553 was hand-delivered to the District Director for filing after the expiration of the specified filing period even though the form arrived sooner than it would have had the taxpayer mailed it within the allowable time. We conclude that petitioner is not entitled to the claimed loss deductions in either 1982 or 1983 based on losses sustained by A & T and is not entitled to the ITC claimed for 1982 based on acquisitions by A & T. Issue 2. Medical Expense Deduction
Petitioner contends that since his doctor had advised him not to mow his lawn, he is entitled to a deduction for amounts he paid *406 someone else to do his lawn mowing. Respondent contends the amounts paid by petitioner for lawn mowing are nondeductible personal expenses under section 262 rather than section 213 medical expenses. Except as otherwise specifically provided, section 262 disallows deductions for personal, living or family expenses. Section 213, however, specifically authorizes a deduction for medical care expenses paid during the taxable year which are not compensated for by insurance or otherwise. "Medical care" is defined by section 213(d) as amounts paid: (d) Definitions. -- For purposes of this section -- (1) The term "medical care" means amounts paid -- (A) for the diagnosis, cure, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or (C) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical care referred to in subparagraphs (A) and (B). In this case, petitioner, bearing the burden of proof under Rule *407 142(a) must establish that the apparently personal expense of lawn care is a medical expense. Petitioner has cited no authority to support his position either in general or with respect to lawn care expenses specifically. Petitioner testified that due to a severe allergy his doctor had directed him not to perform lawn care activities but there was no showing why other family members could not undertake these activities or whether petitioner would have paid others to mow his lawn even absent his doctor's direction not to do so himself. Doctor recommended activities have been held in a number of cases not to constitute deductible medical expenses where the expenses did not fall within the parameters of "medical care." For example in , this Court held that the expense of playing golf was not a deductible medical expense even though this activity was recommended by the taxpayer's doctor as treatment for his emphysema and provided therapeutic benefits. On this record we conclude that petitioner has not carried his burden of proof with respect to the deduction of lawn care costs as a medical expense and is thus not entitled *408 to include the $ 178 expended for lawn care in his medical expense deductions. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated to the contrary all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 1372 provides in pertinent part as follows: (a) Eligibility. -- Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election. * * * (c) When and How Made. -- (1) In General. -- An election under subsection (a) may be made by a small business corporation for any taxable year -- (A) at any time during the preceding taxable year, or (B) at any time during the first 75 days of the taxable year. (2) Treatment of Certain Late Elections. -- If -- (A) a small business corporation makes an election under subsection (a) for any taxable year, and (B) such election is made after the first 75 days of the taxable year and on or before the last day of such taxable year, then such election shall be treated as made for the following taxable year. (3) Manner of Making Election. -- An election under subsection (a) shall be made in such manner as the Secretary shall prescribe by regulations. ↩
3. Section 1362 provides in pertinent part as follows:
SEC. 1362. ELECTION; REVOCATION; TERMINATION. (a) Election. -- (1) In General. -- Except as provided in subsection (g), a small business corporation may elect, in accordance with the provisions of this section, to be an S corporation. (2) All Shareholders Must Consent to Election. -- An election under this subsection shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election. (b) When Made. -- (1) In General. -- An election under subsection (a) may be made by a small business corporation for any taxable year -- (A) at any time during the preceding taxable year, or (B) at any time during the taxable year and on or before the 15th day of the 3d month of the taxable year. * * * (3) Election Made After 1st 2-1/2 Months Treated as Made for Following Taxable year. -- If -- (A) a small business corporation makes an election under subsection (a) for any taxable year, and (B) such election is made after the 15th day of the 3d month of the taxable year and on or before the last day of such taxable year, then such election shall be treated as made for the following taxable year. ↩