THADDEUS J. AND CAROLE D. ZALEWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zalewski v. Commissioner
Docket No. 6559-87.
United States Tax Court
T.C. Memo 1988-340; 1988 Tax Ct. Memo LEXIS 362; 55 T.C.M. (CCH) 1430; T.C.M. (RIA) 88340; July 29, 1988. Michael R. Perme, for the petitioners. Kathleen L. Midian, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180 et seq. [1]
*364 In his notice of deficiency, respondent determined the following deficiencies in petitioners' Federal income tax and additions to tax for the following taxable years: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 9,047.91
$ 452.40
*  1982
54.92
N/A     N/A
1983
1,834.35
91.72   ** The parties have stipulated that the notice of deficiency contained computational errors [2] which caused an understatement of petitioners' tax deficiencies and additions to tax for 1982 and 1983. The parties agree that the following deficiencies and additions to tax are at issue for those years: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1982
$ 1,369.92
$ 68.50 ** 1983
2,319.35  115.97   ***
*365 After concessions by both parties, the issues left to be decided are: (1) whether Ralco Equipment, Inc. filed a valid election to be taxed as a subchapter S corporation for the taxable year 1983 so as to entitle petitioners to deduct corporate net operating losses; (2) whether, and if so to what extent, petitioners must include in income funds diverted from Ralco Equipment, Inc., in 1981 and 1983; (3) whether section 274 serves to disallow deductions claimed by petitioners for expenditures incurred in the operation of a boat for business purposes; (4) whether petitioners are entitled to deductions for Schedule C expenses and other business expenses; and (5) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1981, 1982, and 1983. FINDINGS OF FACT Petitioners, husband and wife, resided at 6219 Cambridge Park Drive, Mentor, Ohio, when they filed their petition in this case. For the taxable years 1981, 1982, and 1983, they filed joint Federal income tax returns with the Internal Revenue Service Center, Cincinnati, Ohio. Prior to 1979, Thaddeus Zalewski (petitioner) was Eastern Regional Sales Manager for Durnell Engineering (Durnell). In *366 1979 his position was eliminated. Subsequently, Durnell suggested that petitioner form his own company and sell Durnell products. To that end, petitioner and Ron Landolph incorporated Ralco Equipment, Inc. (Ralco or the corporation) under the laws of Ohio in 1979. For all relevant times petitioner and Mr. Landolph were co-owners of the corporation and owners of 50 percent of the corporation stock. Petitioner was Ralco's principal operating officer and generally ran its day-to-day operations. Ralco's primary business was selling aerial lift buckets to construction firms. Ralco ceased doing business in September 1983. 1. Subchapter S Election
In 1979, petitioner and Mr. Landolph consulted an attorney, Mr. Joseph Svete, for legal advice on the formation of Ralco. Mr. Svete recommended that Ralco elect to be taxed as a subchapter S corporation (pursuant to subchapter S of the Internal Revenue Code of 1954). Petitioner and Mr. Landolph agreed with Mr. Svete's suggestion. Thereafter, Mr. Svete prepared, and the shareholders signed on October 31, 1979, Form 2553 electing to have Ralco taxed as a subchapter S corporation. The shareholders also signed the necessary consents. *367 Mr. Svete verbally represented that he would file Form 2553 with respondent. Assuming that the "S" election would be filed, petitioner subsequently instructed his tax return preparer, Arthur Oldham, to file the Federal income tax returns for Ralco as an "S" corporation, i.e., on Form 1120S. Ralco incurred an operating loss in 1981 and petitioner deducted his proportionate share of the loss on the premise that Ralco was a subchapter S corporation. [3] In 1982 or 1983 respondent questioned Ralco's subchapter S status and requested that Mr. Oldham file a regular corporation Federal income tax return (Form 1120) on behalf of Ralco for 1983. Mr. Oldham spoke to Mr. Svete who assured him that the "S" election had been made. Given this assurance, Mr. Oldham filed Form 1120S for Ralco for the taxable year 1983. Petitioner deducted $ 2,459 as his share of Ralco's net operating loss for 1983. The parties introduced into evidence a photostatic copy of a Form 2553 signed by Ralco's *368 shareholders on October 31, 1979. [4] The Internal Revenue Service Center, Cincinnati, Ohio has custody and control of all copies of Form 2553, filed by corporations such as Ralco which are located within the jurisdiction of the District Director of Internal Revenue, Cleveland, Ohio. The Director of the Internal Revenue Service Center, Cincinnati, Ohio, issued on November 12, 1987, a Certification of Lack of Record, which disclosed that no Form 2553 had been filed for Ralco Equipment, Inc., at any time from October 31, 1979 through November 9, 1987. In his notice of deficiency, *369 respondent disallowed petitioner's proportionate share of Ralco's 1983 operating loss on the basis that no valid or timely-filed "S"" election had been made by Ralco. 2. Diverted Corporate Income
Commencing in 1985, revenue agent Carol LaBrush examined the records of petitioner and Ralco for the taxable years 1981, 1982, and 1983. In the course of the examination, she examined cash disbursement journals for 1981 and 1983; the corporate and individual tax returns; and cancelled checks and invoices. Agent LaBrush determined that petitioner diverted funds from the corporation's checking account to his own use and benefit in 1981 and 1983 and which he failed to include in income on his tax returns. Petitioner concedes receiving sums from Ralco in 1981 and 1983 in the respective amounts of $ 23,925.78 and $ 11,590 which were not accounted for on his returns. Petitioner contends, however, that only some of the above amounts were for his personal benefit. He asserts that he used some of these funds to pay certain corporate business expenses in cash. Petitioner did not regularly retain receipts or keep records of specific cash expenditures made on behalf of Ralco. Petitioner *370 could not testify as to any specific payments made on behalf of Ralco. [5] Petitioner contends that he is entitled to deductions under section 162(a) for expenditures made on Ralco's behalf. From its inception, Ralco suffered from a shortage of operating capital. In order to keep the business afloat, petitioner sought and received various personal loans. Petitioner testified that the proceeds of the loans were contributed to Ralco to provide working capital or to acquire business equipment for the corporation. No documentary evidence was introduced such as corporate books or minutes or cancelled checks to substantiate these contributions to Ralco. [6]
*371 In June 1983, petitioner received a loan of $ 4,000 from his stepfather, John Bevack. The loan was made in the form of two checks each for $ 2,000 made payable to petitioner. Petitioner cashed the checks and with the proceeds paid a corporate business expense of $ 3,942.73 in 1983. Petitioner contends that a portion of the diversions from Ralco constitute "nontaxable returns of capital." Petitioner also claims that he is entitled to a personal deduction for payment of the corporate expense in 1983. 3. Boat Expenses
Ralco's primary customer and client was Jacobs, Visconci & Jacobs (Jacobs). Sales to Jacobs accounted for approximately 80 percent of Ralco's business sales during the years in issue. Jack Jenkins was Jacobs' agent for products purchased from Ralco. Mr. Jenkins was an avid boater and an official of the Western Reserve Yacht Club (the club) on Lake Erie. Petitioner wished to maintain and further cultivate Mr. Jenkins as a satisfied Ralco customer. With that purpose in mind, petitioner asked Mr. Landolph about the possibility of the corporation's buying a boat and joining the club. Mr. Landolph declined. Thereafter, in 1980, petitioner purchased in *372 his own name a 21-foot boat and joined the club. Petitioner and his family often entertained Mr. Jenkins and his daughter on their boat during the boating season. Petitioner and his wife did not consider Mr. Jenkins a close personal friend, but rather socialized with him in order to further the business relationship. Petitioner and Mrs. Zalewski testified that they entertained Mr. Jenkins on their boat close to 20 times a season during the years in issue. They further testified that the boat was used 90 percent of the time for the purpose of entertaining Mr. Jenkins. Neither petitioner nor Mrs. Zalewski, however, kept a log or diary documenting this purported business use. On his 1981 and 1982 tax returns, petitioner claimed business deductions for boat expenses in the amounts of $ 3,208 and $ 5,572, respectively. The notice of deficiency disallowed both deductions on the ground that petitioner failed to substantiate the expenses. Petitioner did not claim a deduction for boat expenses on his 1983 tax return, but at trial contended he was entitled to deduct expenses of $ 1,186.25 for 1983. Petitioner also claimed at trial that he was entitled to deduct additional boat expenses *373 of $ 282 for 1981. 4. Schedule C and Other Business Expenses
Petitioner claimed additional Schedule C expenses at trial totaling $ 10,772.82 and $ 11,004.75 for the respective 1981 and 1983 years. Petitioner's 1983 automobile expense deduction totaling $ 1,294 was disallowed by respondent. At trial, petitioner claimed additional 1983 automobile expenses totaling $ 696.03. Petitioner also claimed for the first time at trial that he was entitled to automobile expenses of $ 1,765.55 for 1981 and travel and entertainment expenses of $ 2,849.89 and $ 420.94 for 1981 and 1983, respectively. 5. Additions to Tax -- Section 6653(a)(1) and (2)
Respondent determined additions to tax for the years 1981 and 1983. The parties stipulated at trial that additions to tax for 1982 are also in issue. OPINION 1. Subchapter S Election
For the taxable year 1983, the "S" election requirements were set forth in section 1362. [7] Under that section a small business corporation was required to elect "S" status at any time during either the preceding taxable year or on or before the 15th day of the third month of that taxable year, for such election to be effective for that *374 year. If the election was made after the 15th day of the third month but prior to the end of the taxable year, the election would be treated as effective for the following year. *375 The record clearly indicates that Ralco never effected a valid "S" election. Although Ralco's shareholders signed Form 2553, it was apparently never filed with respondent since there is no independent evidence that respondent ever received a Form 2553 on behalf of Ralco. [8] Nevertheless, petitioner contends that he should be allowed the benefits of subchapter S because his attorney, to whom the shareholders entrusted the task of filing Form 2553, failed to make the election. We have consistently held that the specific time limitations provided for "S" *376 elections cannot be waived because of equitable considerations. As the Court stated in Pestcoe v. Commissioner,40 T.C. 195, 198 (1963): It is true that the result may be harsh, but the Court cannot grant an extension in the face of such definite time limits. Simons v. United States,208 F. Supp. 744 (D. Conn. 1962). Subchapter S was placed in the Code * * * so that businesses could elect their form of organization without having to take into account the tax consequences. The election is optional, but if a taxpayer wishes to take advantage of these provisions he must also comply with their requirements. * * * In any event, whatever the equities or the harsh results, we do not feel that we can grant an extension of time where the Congress has specifically set the time for the making of the election required by the Code if the privilege of special tax treatment is to be enjoyed by certain small business corporations. Simons v. United States, supra; cf. J. E. Riley Investment Co. v. Commissioner,311 U.S. 55 (1940), affirming 110 F.2d 655 (C.A. 9, 1940) and a Memorandum Opinion of this Court. *377 [Fn. ref. omitted.] Thus, although petitioner and Mr. Landolph relied on their attorney to file Form 2553, the ultimate burden of compliance with section 1362 rested with the shareholders, the taxpayers seeking to take advantage of subchapter S. [9] Given Ralco's failure to timely elect to be taxed under the provisions of subchapter S, petitioner consequently is not entitled to deduct his proportionate share of Ralco's operating loss for 1983 pursuant to section 1366. 2. Diverted Corporate Funds
The next issue is whether, and to what extent, petitioner must include diverted corporate funds in income. Petitioner first argues that he is entitled to deductions for payments made on the corporation's behalf. In order to be deducted pursuant to section 162, business expenses must be expenses of the taxpayer who claims the deduction, and not expenses of another taxpayer. Hewett v. Commissioner,47 T.C. 483, 488 (1967). In this regard a corporation is treated as a separate entity distinct *378 from its shareholders for tax purposes. New Colonial Ice Co. v. Helvering,292 U.S. 435, 442 (1934). Further, it is well established that a shareholder, even a sole or majority shareholder, is not entitled to a deduction from his personal income for his payment of the expenses of the corporation. Deputy v. du Pont,308 U.S. 488, 494 (1940); Rink v. Commissioner,51 T.C. 746, 751 (1969); Koree v. Commissioner,40 T.C. 961, 965-966 (1963); Kahn v. Commissioner,26 T.C. 273 (1956). Such payments constitute either loans or capital contributions to the corporation. Deputy v. du Pont, supra;Rink v. Commissioner, supra.
It is evident that the expenses paid by petitioner were the business expenses of Ralco. Furthermore, during the years in issue, Ralco engaged in business activities of a substantial nature; its separate existence cannot be disregarded. See Moline Properties, Inc. v. Commissioner,319 U.S. 436, 438-439 (1943); Rink v. Commissioner, supra at 752. Petitioner is not entitled to deductions from his personal income *379 for his payment of corporate expenses. [10]
Next, petitioner claims that the diversions constitute corporate distributions excludable from gross income. If by this he means that the distributions constitute the repayment of loans previously made by him to Ralco, then the record does not support his position. The evidence in this case simply does not permit us to make a finding that any advances petitioner made to his corporation were loans rather than capital contributions.[11] On the other hand, if petitioner means that the distributions constitute a return of his basis in Ralco, then the record also does not support his position. *380 Generally, where a taxpayer has dominion and control over diverted funds, they are includable in his gross income. Sec. 61(a); Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 431 (1955). Where a stockholder diverts corporate funds to himself, it is proper to regard such diverted funds as constructive dividends and corporate distributions subject to the provisions of sections 301(c) and 316. Truesdell v. Commissioner,89 T.C. 1280, 1295 (1987). [11]
*381 Under sections 301(c) and 316(a), [12] dividends are taxable to a stockholder as ordinary income to the extent of the earnings and profits of the corporation. Any amount received by the stockholder in excess of earnings and profits is considered to be a nontaxable return of capital to the extent of the stockholder's adjusted basis in his stock. Any amount received exceeding the stock's adjusted basis is considered to be gain from the sale or exchange of property. *382 The question remains whether there were sufficient earnings and profits of Ralco to provide for the taxation of the "diverted" funds to petitioner as constructive dividends. Neither party submitted evidence as to the earnings and profits of Ralco for the years 1981 and 1983. However, the burden of proving that the corporation did not have earnings and profits sufficient to support dividend treatment lies with petitioner. Truesdell v. Commissioner,89 T.C. at 1295-1296. Petitioner has not met this burden. [13]
*383 Nevertheless, the record establishes that petitioner did pay some corporate business expenses with "diverted" funds. The funds so expended were not for petitioner's own use and benefit and therefore must be subtracted in computing the net corporate diversions. [14] Based on Agent LaBrush's testimony, we find that in 1981 and 1983 petitioner paid corporate expenses with "diverted" funds in the respective amounts of $ 5,973.38 and $ 7,780.53. Accordingly, the amount of corporate funds diverted to petitioner's own benefit is reduced by the above amounts to $ 17,951.90 and $ 3,809.47 from $ 23,925.78 and $ 11,590, respectively, in 1981 and 1983. Based on the foregoing, we conclude that the corporate diversions found above do not constitute nontaxable distributions from Ralco; they are includable in petitioner's gross income for 1981 and 1983 as constructive dividends under section 61(a)(7). 3. Boat Expenses
Respondent contends that the boat expenses are entertainment expenses subject to the substantiation requirements *384 of section 274(d) which petitioner has failed to satisfy. The only evidence before the Court relating to this issue is testimony by petitioner and his wife. We have concluded from that testimony that petitioner did entertain Ralco's major client on his boat during the years in issue. That conclusion, however, does not enable us to allow the deductions. Section 274 disallows a deduction for expenditures incurred in connection with entertaining business clients where the taxpayer fails to substantiate the expenditures. Section 274(d) states in relevant part: (d) SUBSTANTIATION REQUIRED. -- No deduction shall be allowed -- * * * (2) for any time with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, *385 or use of the facility * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility * * *. There is absolutely no evidence before the court regarding the amounts claimed as deductions. In Rutz v. Commissioner,66 T.C. 879 (1976), we held that a taxpayer failed to substantiate under section 274(d) claimed entertainment expenses with respect to his boat. The taxpayer in Rutz presented far more evidence substantiating his claims than has petitioner here. In light of the complete lack of any evidence, petitioner is not entitled to deductions for expenses incurred in connection with the boat. 4. Schedule C and Other Business Expenses
Petitioner deducted automobile expenses of $ 1,294 on his 1983 tax return. In his statutory notice of deficiency respondent disallowed this amount in its entirety for lack of substantiation. At trial, petitioner claimed additional automobile expenses of $ 696.03 for 1983. Petitioner also claimed for the first time at trial that he was entitled to automobile expenses of $ 1,765.55 for 1981, travel and entertainment expenses of $ *386 2,849.89 and $ 420.94 for 1981 and 1983, respectively, and additional Schedule C expenses in the respective amounts of $ 10,772.82 and $ 11,004.75 for 1981 and 1983. Petitioner attempted to prove the deductibility of the above expenses through the testimony of Agent LaBrush. Agent LaBrush merely testified that the expenses were not "corporate type expenses." Petitioner failed to introduce evidence either demonstrating that the expenses were incurred in his trade or business under section 162(a) or meeting the substantiation requirements of section 274(d). Respondent is sustained. 5. Additions to Tax-Section 6653(a)(1) and (2)
In his notice of deficiency, respondent determined additions to tax against petitioner under section 6653(a)(1) and (2) for negligence or intentional disregard of respondent's rules and regulations for the years 1981 and 1983. At trial, the parties agreed that section 6653(a) additions to tax for 1982 are also in issue. Petitioner bears the burden of proof with respect to such determination for the years 1981 and 1983. Rule 142(a); see Abramo v. Commissioner,78 T.C. 154, 162-164 (1982); *387 Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioner did not introduce evidence regarding the additions to tax and has thus failed to meet his burden of proof. We sustain respondent's determination with respect to section 6653(a)(1) and (2) for the years 1981 and 1983. In the year 1982, the deficiency determined by respondent was $ 54.92. Respondent failed to determine an addition to tax under section 6653(a)(1) and (2) for that year in his notice of deficiency but subsequently asserted one. Moreover, respondent also asserted an increased addition to tax under section 6653(a) for the year 1983. Respondent, like petitioner, failed to sustain his burden of proving the increased additions to tax asserted in these years. Rule 142(a). We hold for petitioner on this issue. Decision will be entered under Rule 155.
Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
*. 50 percent of the statutory interest due on $ 9,047.91, computed from April 15, 1982, to the earlier of the date of assessment or the date of payment. 50 percent of the statutory interest due on $ 1,369.92, computed from April 15, 1983, to the earlier of the date of assessment or the date of payment. *** 50 percent of the statutory interest due on $ 2,319.35, computed from April 15, 1984, to the earlier of the date of assessment or the date of payment. **↩ 50 percent of the statutory interest on $ 1,834.35, computed from April 15, 1983, to the earlier of the date of assessment or the date of payment. 2. In his explanation of adjustments for the years 1982 and 1983, respondent purported to disallow as deductions "boat expenses" claimed by petitioner on his 1982 business Schedule C totaling $ 5,572 and $ 1,294 claimed by petitioner on page 1 of his 1983 return as auto expenses. However, in his mathematical calculation for both years, respondent erroneously reflected these adjustments as decreases rather than increases to taxable income. Calculation of the corrected proposed deficiencies as agreed to by the parties and set forth below resulted primarily from doubling the amount of the correct adjustments for 1982 ($ 5,572 x 2) and 1983 ($ 1,294 x 2). The burden of disproving the increased deficiencies determined by respondent remains with petitioner since the income adjustments in question were clearly disclosed in the notice of deficiency. However, the addition to tax for 1982 and the increased addition to tax for 1983 constitute new matter. The burden of proving these additions to tax is on respondent. Rule 142(a)↩. 3. Petitioner concedes that Ralco was not a subchapter S corporation for the 1981 taxable year and that therefore he is not entitled to deduct $ 14,071 as his share of Ralco's 1981 net operating losses. ↩
4. This typed Form 2553 is signed by Mr. Landolph as president of Ralco Equipment on October 31, 1979 and both Mr. Landolph and petitioner on October 31, 1979 as shareholders. Election to be taxed under subchapter S was made for the year beginning November 1, 1979. The space for employer identification number contains in writing the words "Application Pending" and underneath, the number 34-1297120, the employer identification number later applied for and received. At the top of the form are two stamps, "Rejected" and "May 29, 1985." The stamp "Rejected" also appears below the names of the shareholders. ↩
5. Petitioner testified that most of the corporate records relating to the years in issue were lost. Agent LaBrush testified that she examined the corporate returns for Ralco in 1981 and 1983 as a follow-up to an earlier year audit of another revenue agent. Ms. LaBrush made no diverted corporate income adjustment in 1982 because all the corporate records were lost. ↩
6. As an example, petitioner testified that with the proceeds of one loan he purchased a demonstrator lift for $ 12,000 which he in turn contributed to the corporation. No evidence was introduced substantiating the lift's purchase or subsequent contribution to Ralco. ↩
7. Section 1362 provides in relevant part as follows:
SEC. 1362. ELECTION; REVOCATION; TERMINATION. (a) ELECTION. -- (1) IN GENERAL. -- Except as provided in subsection (g), a small business corporation may elect, in accordance with the provisions of this section, to be an S corporation. (2) ALL SHAREHOLDERS MUST CONSENT TO ELECTION. -- An election under this subsection shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election. (b) WHEN MADE. -- (1) IN GENERAL. -- An election under subsection (a) may be made by a small business corporation for any taxable year -- (A) at any time during the preceding taxable year, or (B) at any time during the taxable year on or before the 15th day of the 3d month of the taxable year. * * * (3) ELECTION MADE AFTER 1ST 2-1/2 MONTHS TREATED AS MADE FOR FOLLOWING TAXABLE YEAR. -- If -- (A) a small business corporation makes an election under subsection (a) for any taxable year, and (B) such election is made after the 15th day of the 3d month of the taxable year and on or before the last day of such taxable year,
then such election shall be treated as made for the following year. ↩
8. As previously stated, a search of respondent's records did not disclose a Form 2553 filed for Ralco for the period commencing October 31, 1979. The parties have stipulated into evidence a Form 2553 which is stamped "Rejected" and "May 29, 1985." However, this form does not bear an Internal Revenue Service stamp. Since its origin is unidentified and the rejected date is more than 5 years after it was purportedly signed and filed by the Ralco shareholders, we conclude that Ralco failed to timely elect "S" status for the year 1983. ↩
9. See Taylor v. Commissioner,T.C. Memo. 1987-399↩. 10. An exception to the general rule that a taxpayer may not deduct the expense of another person exists if the taxpayer pays the expense of the other person in order to protect or promote the taxpayer's own trade or business. Gould v. Commissioner,64 T.C. 132, 134-135↩ (1975). Petitioner has not proven facts sufficient to invoke this exception. 11. Whether a stockholder's advance is a loan or capital contribution is a question of fact. Electronic Modules Corp. v. United States,695 F. 2d 1367, 1371 (Fed. Cir. 1982); Fin Hay Realty Co. v. United States,398 F. 2d 694, 695 (3d Cir. 1968); Dixie Dairies Corp. v. Commissioner,74 T.C. 476, 493 (1980). The courts have considered various criteria in determining whether a particular advance creates debt or equity. Electronic Modules Corp. v. United States, supra;Estate of Mixon v. United States,464 F. 2d 394, 402 (5th Cir. 1972). In this case no note or other evidence of indebtedness was created on payment of the corporate expenses. Moreover, the payments appear to have been made in order to keep Ralco in business. As such they appear to be equity contributions. See Estate of Mixon v. United States, supra.↩
12. Section 301(c) provides, in pertinent part: (c) AMOUNT TAXABLE. -- In the case of a distribution [of property made by a corporation to a shareholder with respect to its stock] -- (1) AMOUNT CONSTITUTING DIVIDEND. -- That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. (2) AMOUNT APPLIED AGAINST BASIS. -- That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) AMOUNT IN EXCESS OF BASIS. -- (A) IN GENERAL. -- Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.
Section 316(a) provides: (a) GENERAL RULE. -- For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders -- (1) out of earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.
Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301↩ applies, such distribution shall be treated as a distribution of property for purposes of this subsection. 13. In Truesdell v. Commissioner,89 T.C. 1280, 1295-1296↩ (1987), we noted that the taxpayer failed to introduce evidence whereas respondent furnished a calculation of earnings and profits for the years 1978 and 1979, but not 1977. We held that the taxpayer had failed his burden of proving that there were insufficient earnings and profits to sustain the deficiencies determined in all years, but that respondent had not met his burden of proving the earnings and profits for the year 1977 were sufficient to support the increase in deficiency asserted for that year in his amended answers. Here, neither party furnished a calculation of the earnings and profits for either 1981 or 1983. In fact, the issue of whether earnings and profits were sufficient to support the constructive dividends determined was not expressly argued by petitioner. 14. See DiZenzo v. Commissioner,T.C. Memo. 1964-121, revd. in part on another issue and remanded 348 F.2d 122↩ (2d Cir. 1965).