LESLIE COMBS II, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
COMBS v. COMMISSIONER
Docket No. 39233-85.
United States Tax Court
T.C. Memo 1989-206; 1989 Tax Ct. Memo LEXIS 206; 57 T.C.M. (CCH) 288; T.C.M. (RIA) 89206; May 1, 1989; As corrected May 4, 1989 Charles R. Hembree, for the petitioner. Frederick W. Krieg, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By a statutory notice of deficiency dated July 24, 1985, respondent determined a deficiency *207 in petitioner's Federal income tax in the amount of $ 406,923.36 for taxable year 1977. After concessions, the sole issue for our consideration is whether Spendthrift Farm, Inc., qualifies as a subchapter S corporation in taxable year 1977, pursuant to section 1371 [1] et seq. [now sections 1361 et seq.]. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Lexington, Kentucky, at the time he timely filed the petition herein. Petitioner, a cash basis taxpayer, is primarily in the business of raising horses, although he also raises cattle and farms tobacco. On May 24, 1955, petitioner incorporated his business under the name Mares Nest Stud, Inc., a Kentucky corporation. Subsequently, the name of the corporation was changed to Hanes and Combs, Inc., and then again to Combs Farm, Inc. By 1977 the name had been changed to Spendthrift Farm, Inc. (Spendthrift), under which name the corporation was still doing business *208 at the time of trial. Since 1977, Spendthrift, a calendar year corporation, has had only one class of stock, and until June 30, 1977, petitioner was the only shareholder of all Spendthrift's issued and outstanding stock. On July 1, 1977, petitioner transferred 11.45 percent of the issued stock to his son, Brownell Combs II (Brownell), retaining 88.55 percent himself. On January 3, 1983, petitioner transferred additional shares of stock to Brownell until they each owned 50 percent. [2]
In January 1977, petitioner and his accountants, Fred H. Bower (Bower) of Louisville, Kentucky, and Randolph McKean (McKean) of Miami, Florida, devised a plan of reorganization to merge Spendthrift with Enslow Corporation (Enslow) and Kentucky Milling Supply, Inc. (Kentucky Milling), in which petitioner owned 67 percent and 76 percent, respectively. Pursuant to the plan, Bower and McKean [3] decided to have Spendthrift elect to be treated as a subchapter S corporation, effective taxable year 1977, in preparation for the merger and the transfer of assets. The subchapter *209 S election was essential to the plan in the minds of all the participants. Bower, in Kentucky, prepared a Form 2553, an Election By A Small Business Corporation (Form 2553), for Spendthrift which was still doing business at that time under the name of Combs Farm, Inc. By a letter dated January 20, 1977, Bower sent the Form 2553 to McKean in Florida, where petitioner was temporarily residing, urging him to have petitioner sign the form and mail it by February 1, 1977. The Form 2553 bears January 30, 1977, as the date of signing. The envelope in which the Form 2553 was mailed to the Internal Revenue Service Center in Memphis, Tennessee (The Memphis Service Center), bore a Pitney-Bowes postage machine postmark of January 30, 1977, and a United States Postal Service postmark of February 2, 1977. On April 11, 1977, the Memphis Service Center wrote petitioner acknowledging receipt of the Form 2553 and conditionally accepting Spendthrift's *210 election to be treated as a subchapter S corporation. [4] With the election complete, Spendthrift effectuated the planned reorganization and merged on June 30, 1977, with Enslow and Kentucky Milling. By letter dated January 15, 1979, Spendthrift's election to be treated as a subchapter S corporation was revoked. In March 1981, Internal Revenue Service agents (revenue agents) commenced an audit of Spendthrift's taxable years 1977, 1978 and 1979. The Appeals Officer assigned to the case determined that Spendthrift did not qualify as a subchapter S corporation for 1977 because the election had not been timely mailed. Without an effective subchapter S election, the beneficial tax results which petitioner had intended to create through the reorganization would be lost. On March 4, 1983, petitioner brought a suit for malpractice against McKean in the United States District Court for the Southern District of Florida which was ultimately dismissed without prejudice. OPINION The sole issue *211 for our consideration is whether Spendthrift made a valid election and became a valid subchapter S election corporation in taxable year 1977. Only the timing of the election is in dispute as Spendthrift qualifies for subchapter S treatment in every other respect. Section 1372(c) provided that in order to elect subchapter S treatment, a small business corporation must make a valid election at any time during the first month of the taxable year or during the month preceding the first month of the taxable year. This advice was repeated on the back of Form 2553. Where a letter is sent by regular mail prior to the prescribed due date, but is delivered to the Internal Revenue Service after the prescribed due date, the date of the postmark is deemed to be the date of delivery. Sec. 7502. Although the envelope in which Spendthrift's Form 2553 was mailed bore a private postmark of January 30, 1977, the United States *212 Postal Service postmark of February 2, 1977, controls. See section 301.7502-1(c)(1)(iii)(b), Proced. and Admin. Regs; Malekzad v. Commissioner,76 T.C. 963 (1981). Although Spendthrift's Form 2553 was otherwise correct and valid, it was mailed on February 2, 1977, after the election deadline. Therefore, the election was not, in fact, timely filed within the meaning of section 1372(c). Petitioner first argues that the doctrine of substantial compliance should apply in this situation. It is well established that substantial compliance may be available where the regulatory requirements in issue are merely procedural or directory, designed to expedite the smooth and orderly flow of business, and where the omission has not operated to respondent's prejudice. Tipps v. Commissioner,74 T.C. 458, 468 (1980). Petitioner argues that all the necessary elements of the election were completed and the election should be accepted because the defect was a minor one. Petitioner cites the legislative history to show that purpose of the limited time for making subchapter S elections was to prevent post-transactional tax planning by taxpayers who preferred to *213 wait until the tax results were evident before electing subchapter S status. Furthermore, petitioner maintains that the late filing was not his fault, but was solely attributable to McKean's carelessness. Petitioner argues that the mistake of another should not be allowed to invalidate his attempted compliance. We have always required strict and scrupulous compliance with all of the statutorily mandated requirements of subchapter S elections. Feldman v. Commissioner,47 T.C. 329 (1966); Pestcoe v. Commissioner,40 T.C. 195 (1963). As we noted in Pestcoe v. Commissioner, supra at 198"The [subchapter S] election is optional, but if a taxpayer wishes to take advantage of these provisions he must also comply with their requirements." See also Brutsche v. Commissioner,585 F.2d 436 (10th Cir. 1978). [5] Petitioner does not persuade us that we should relax our long-standing insistence on strict compliance. The various requirements for election are clear and within the taxpayer's control. The rigid inflexibility with which *214 these requirements are enforced has been time tested and proven. Petitioner's advisors upon whom he completely relied were aware of the importance of timely filing. Thus, we conclude that the doctrine of substantial compliance does not cure the late filing of petitioner's subchapter S election. Petitioner next argues that the retroactive revocation of the subchapter S election represents an abuse of process on the Commissioner's part, because the election was initially accepted. Section 7805 grants the Commissioner the authority to give regulations and rulings retroactive effect. This authority exists only so long, however, as it does not produce inequitable results. Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). *215 However, the Commissioner's decisions will generally be upheld unless there is evidence of unconscionable injury or undue hardship suffered by the taxpayer through reliance on the Commissioner's earlier position. LeSavoy Foundation v. Commissioner,238 F.2d 589 (3d Cir. 1956). Similarly, where the Commissioner's ruling reveals an unfair disparity in the treatment accorded to similarly situated taxpayers an abuse of discretion may be found. International Business Machines Corp. v. United States,343 F.2d 914 (Ct. Cl. 1965); Rue R. Elston, Co. v. United States,532 F.2d 1176 (8th Cir. 1976); Manocchio v. Commissioner,78 T.C. 989 (1982), affd. 710 F.2d 1400 (9th Cir. 1983). Petitioner argues that the interests of respondent have not been jeopardized but he fails to recognize respondent's interest in enforcing the tax laws and properly collecting revenue. Petitioner also argues that the result is unduly harsh because the entire reorganization plan hinged on a successful subchapter S election. Although the record manifests that the subchapter S election was an integral part of the reorganization *216 plan, a harsh result alone does not imply an abuse of process. We cannot conclude that the revocation of Spendthrift's election was abusive. Petitioner has not argued that other untimely subchapter S elections were not revoked when the defect was discovered. He does not claim that respondent discriminated against him in revoking Spendthrift's election while favoring another corporation. Furthermore, this is not a case where, although petitioner faithfully complied with the letter of the law, respondent subsequently changed his mind. Here, petitioner failed to comply with the law which was in effect at that time. There is no extraordinary harshness where the entire problem is caused by petitioner's own mistake. Petitioner's final argument is that respondent must be equitably estopped from changing his earlier ruling in which Spendthrift's election was accepted. Although the doctrine of equitable estoppel can be applied against the Commissioner, it is well established that it should be used *217 with restraint. Schuster v. Commissioner,312 F.2d 311 (9th Cir. 1962), affg. 32 T.C. 998 (1959); Vestal v. Commissioner,152 F.2d 132 (D.C. Cir. 1945); Hudock v. Commissioner,65 T.C. 351 (1975). As the Court of Appeals for the Sixth Circuit noted "Estoppel, if applied in this situation, might permit a misinformed or overly generous government official to give away assets or funds that the government holds for the public good under congressional mandate." Housing Authority of Elliott County v. Bergland,749 F.2d 1184, 1190 (6th Cir. 1984). The burden of proof is on the party claiming estoppel against the government. Lyng v. Payne,476 U.S. 926, 934 (1986). The elements of equitable estoppel are: (1) a false representation or wrongful misleading silence; (2) an error in a statement of fact and not in opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the other. Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977), citing *218 to Underwood v. Commissioner,63 T.C. 468 (1975), affd. 535 F.2d 309 (5th Cir. 1976). It is well settled that equitable estoppel will not prevent the Commissioner from correcting an error of law notwithstanding the taxpayer's reliance on the Commissioner's incorrect statement. Dickman v. Commissioner,465 U.S. 330 (1984); Dixon v. Commissioner,381 U.S. 68 (1965); Hawkins v. Commissioner,713 F.2d 347 (8th Cir. 1983), affg. a Memorandum Opinion of this Court. Furthermore, where a mistake arises from a misrepresentation by the taxpayer, whether unintentional or wilful, the mistake cannot be allowed to stand uncorrected. Estate of Jones v. Commissioner,795 F.2d 566, 575 (6th Cir. 1986), affg. a Memorandum Opinion of this Court. Petitioner maintains that all the elements of estoppel are present in the case at hand. Petitioner argues that, based on respondent's initial acceptance, he relied on the validity of the subchapter S election to his ultimate detriment, because the entire reorganization plan was meaningless without the subchapter S corporation. However, petitioner incorrectly *219 characterizes respondent's acceptance as a mistake of fact. The acceptance indicated that all the definitional elements of a valid election had been satisfied, including whether the election had been timely filed, and that Spendthrift qualified as a subchapter S corporation. Such a conclusion is legal, not factual. [6] Furthermore, the acceptance letter referred to a possible subsequent examination, making the acceptance expressly subject to later consideration. Finally, petitioner's position is weakened by the fact that it is his own failure to ensure that his advisors were complying with the explicit rules and regulations for electing subchapter S status which caused his later difficulties. Equitable estoppel is most strongly justified where the taxpayer scrupulously complies with current regulations and rules only to have the Commissioner later change the rules. Petitioner's troubles were caused by the late filing of the Form 2553 *220 which was under his control. Thus, we conclude that none of petitioner's arguments afford him any relief. The Form 2553 was unquestionably filed after the deadline and the results cannot be mitigated by the doctrine of substantial compliance. Furthermore, respondent did not abuse his discretion in revoking his prior acceptance nor will he be estopped from correcting his earlier mistaken legal conclusion. In light of the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. On August 3, 1983, the stock was offered for public sale, and petitioner retained only 32.5 percent at the time of trial.↩
3. Affidavits submitted into evidence indicate that petitioner relied to an extraordinary degree on the counsel of his tax and legal advisors to the extent that he was only minimally aware of transactions which were conducted in his name.↩
4. The exact language of the letter was: "the form is accepted, effective for the tax year beginning January 1, 1977, subject to verification if we should examine your return at a future date."↩
5. See also Zalewski v. Commissioner,T.C. Memo. 1988-340; Fratantonio v. Commissioner,T.C. Memo. 1988-158; Smith v. Commissioner,T.C. Memo. 1988-18; Taylor v. Commissioner,T.C. Memo. 1987-399↩.
6. See T. H. Campbell & Bros. v. Commissioner,T.C. Memo. 1975-149; Hooper v. Commissioner,T.C. Memo. 1974-176↩.